IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION


CLINTON WILLIAMS                                                    PLAINTIFF

VERSUS                                    CIVIL ACTION NO. 2:10cv205KS-MTP

LIBERTY MUTUAL INSURANCE COMPANY;
AND JOHN DOES 1-5                                                 DEFENDANTS


## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion to Dismiss **[#46]** filed on behalf of the

defendant, Liberty Mutual Insurance Company ("Liberty Mutual").  The court, having

reviewed the motion, the responses, the pleadings and exhibits on file, the authorities

cited and being fully advised in the premises, finds that the motion should be granted.

The court specifically finds as follows:


## FACTUAL BACKGROUND

On December 8, 2004, Steven Tanner, a resident of Mobile, Alabama, applied for

workers compensation coverage through the Alabama Workers Compensation

Assigned Risk Plan to cover his Alabama business.  His application was processed and

ultimately assigned to defendant Liberty Mutual, as a servicing carrier for the Alabama

plan, to issue him a policy, which it did for the 12/8/04 -12/8/05 policy period.  Tanner

represented in the application that none of his business was conducted out of the State

of Alabama and that none of his employees traveled out of state.  His application also

stated that there was no labor interchange with any other business and he did not lease employees to or from other employers.

The Declarations page of the policy expressly stated:

**Item 3. Coverage**

**A.** Workers Compensation Insurance: Part One of the policy applies to Workers Compensation Law of the states listed here: **AL**

* * *

**C.** Other States Insurance: Part Three of the policy applies to the states, if any, listed here: **REFER TO RESIDUAL MARKET LIMITED OTHER STATES INSURANCE ENDORSEMENT WC00 03 26 A**

As referenced in Item 3, Subpart C, the policy contained a Residual Market Limited Other States Insurance Endorsement ("RMLOSIE") which provided coverage for injuries to employees of the insured in other states, if certain conditions were met. One of these conditions was that the injured employee must have been hired in Alabama or, at the time of injury, been principally employed in Alabama. Another condition was that the work being performed in the other state was temporary.

The plaintiff, Clinton Williams, was hired on September 11, 2005, the day before his injury, by Danny Jordan. The evidence reveals that Jordan, from time to time, obtained workers for Tanner. According to Williams, Tanner and Jordan had an agreement where Tanner would provide workers' compensation insurance coverage for the men Jordan brought to work for him. On this occasion, Williams was hired to assist with repairs to Pat Peck Motors in Gulfport, Mississippi in the wake of Hurricane Katrina. Williams, a resident of Mississippi, had worked for Tanner on other jobs, all in Alabama.

This was the first time Williams had worked on a job for Tanner in Mississippi.  Williams alleges that on September 12, 2005, while in the employ of Tanner at Pat Peck Motors, he fell from the roof of the facility while participating in repairs thereto and was injured.

Liberty was not able to complete its investigation of Williams' claim until May 2006.  On or about May 15, 2006, Liberty accepted compensability for the claim under Alabama law and paid all accrued medical and indemnity benefits due under the Alabama Workers Compensation Act.  Pursuant to the RMLOSIE, Liberty subsequently accepted compensability of the claim under the Mississippi Workers' Compensation Law, although no additional benefits were payable under Mississippi law.[1]

Williams filed five actions as a result of this one accident:

1. An administrative proceeding in the Mississippi Workers Compensation Commission ("MWCC") for benefits under the Mississippi Workers Compensation Law, filed November 30, 2005;

2. An action in the Circuit Court of Mobile County, Alabama against Tanner and Liberty for workers compensation benefits under the Alabama Workers Compensation Law, filed January 30, 2006;[2]

3. An action for punitive and other extra-contractual damages against Tanner and Liberty in the Circuit Court of Mobile County, Alabama based on the alleged tort of outrage under Alabama law, filed January 30, 2006;[3]

4. An action for punitive and other extra-contractual damages against Tanner and

---

[1]  A party is entitled to seek workers compensation benefits in two states subject to a credit in the second state for benefits received in the first. *See Southland Supply Co., Inc. v. Patrick*, 397 So.2d 77, 79 (Miss. 1981).

[2]  Alabama does not have a separate and distinct administrative proceeding for litigating workers compensation claims. ALA.. CODE ANN. §25-5-1, *et seq.*

[3]  Williams' outrage claim was filed in the same Complaint as his workers compensation claim on January 30, 2006. On or about July 18, 2006, Williams filed an Amended Complaint joining Liberty as a defendant. On April 3, 2007, Tanner filed a Motion to Sever Williams' workers compensation and outrage claims, and on August 9, 2007, the Circuit Court of Mobile County entered an Order severing the claims.

Liberty for the defendants' alleged "bad faith" under Mississippi law, filed in the Circuit Court of Greene County, Mississippi on March 12, 2008, over two years after Williams filed his outrage case in Alabama. It was subsequently removed to this Court as Civil Action No. 2:08cv91-KS-MTP. Tanner moved to dismiss the bad faith action on the grounds that Plaintiff had not exhausted his administrative remedies, while Liberty moved to dismiss on the same grounds asserted herein. This Court dismissed the action on Tanner's motion because Plaintiff had failed to exhaust his administrative remedies in the MWCC. By order of August 20, 2008. This court did not reach the arguments included in Liberty's motion to dismiss, which are asserted here.

5. Williams filed the present action on July 16, 2010 in the Circuit Court of Greene County, Mississippi, and it was removed to this Court on August 20, 2010.

The Mississippi and Alabama workers compensation actions were both eventually settled by agreement of the parties. The Alabama outrage action was dismissed without prejudice by agreement of the parties on May 3, 2010. As stated, after Williams' MWCC action was settled and the Alabama outrage action was dismissed, Williams filed this bad faith action, in which Tanner was not joined as a defendant.

Liberty Mutual has brought the present motion asserting that Alabama law applies to this case and as Alabama does not allow bad faith claims against workers compensation carriers, Williams' claims must be dismissed. Williams responds that Liberty Mutual's actions and omissions, which are relevant to this case – its handling and adjustment of his Mississippi workers' compensation claim – took place in its claims office in Brentwood, Tennessee, at its home office in Wisconsin, as well as in Mississippi where Williams' workers' compensation claim was adjudicated before the MWCC. Additionally, the injuries claimed by Williams as a result of Liberty Mutual's alleged unreasonable and unnecessary denial and delay of payment of workers'

compensation benefits under the MWCA occurred in Leakesville, Mississippi, where Mr. Williams resides.  Thus, the court is presented with a choice of law predicament.

## LAW AND ANALYSIS

The parties acknowledge that the law applicable to a claim for punitive and other extra-contractual damages under Mississippi law is different from Alabama law.  Since there is a conflict between Mississippi and Alabama law, the court must determine whether the law of Mississippi or Alabama should be applied to Williams' claims.  *Ingalls Shipbuilding v. Federal Ins. Co.*, 410 F.3d 214, 230 (5th Cir. 2005).  The question of choice of law is and always has been one for the court in the first instance.  *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941); *Trijec Properties, Inc. v. U. S. Mineral Products*, 974 F.2d 602 (5th Cir. 1992); and *Walls v. General Motors, Inc.*, 906 F.2d 143 (5th Cir. 1990).

This is a diversity action and, therefore, this court is bound to apply the law of the forum state.  *Erie Railroad Co. v Tompkins*, 304 U.S. 64 (1938).  This includes Mississippi's conflict-of-law rules.  *Klaxon v. Stentor Electric Mfg. Co.*, *supra*.  Choice of law questions in Mississippi are governed by the "center of gravity"/"most significant relationship" test as set forth in the Restatement (Second) of Conflicts of Law.  *See, Craig v. Columbus Compress & Warehouse Co.*, 210 So.2d 645, 649 (Miss. 1968); *Mitchell v. Craft*, 211 So.2d 509 (Miss. 1968); and *Boardman v. United Services Auto Assn.*, 470 So.2d 1024, 1031 (Miss. 1985).  "A court that applies the 'center of gravity' approach must determine 'which state has the most substantial contacts with the parties and the subject matter of the action.'"  I*ngalls*, 410 F.3d at 230-31 (quoting *Boardman*, 470 So.2d at 1031).  "[T]he law of a single state does not necessarily control every

issue in a case" and the center of gravity test should be applied to each question presented, "recognizing that the answer produced in some instances may be that the law of this state applies and on other questions in the same case the substantive law of another state may be enforceable." *Boardman,* 470 So.2d at 1031.

Mississippi courts have routinely relied on the Restatement (Second) of Conflict of Laws for choice of law analyses. *See e.g., Zurich American Ins. Co. v. Goodwin*, 920 So.2d 427, 436 (Miss. 2006) (applying § 188); *Boardman*, 470 So.2d at 1032 (§ 188); *Mitchell*, 211 So.2d at 513 (applying § 145); *McDaniel v. Ritter*, 556 So.2d 303, 310 (Miss. 1989) (§ 145). The Restatement (Second) of Conflict of Laws contains several provisions that come into play in this matter, including Sections 6, 145, 184, and 188. Section 6 of the Restatement states the following:

> **§ 6 Choice-of-Law Principles**
>
> (1)     A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2)     When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>
> (a)     the needs of the interstate and international systems,
>
> (b)     the relevant policies of the forum,
>
> (c)     the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d)     the protection of justified expectations,
>
> (e)     the basic policies underlying the particular field of law,
>
> (f)     certainty, predictability and uniformity of result, and
>
> (g)     ease in the determination and application of the law to be applied.

Conflict of law principles are not applied mathematically or mechanically under Mississippi law. *See Zurich American*, 920 So.2d at 435, ¶17; *Boardman*, 470 So.2d at

1034. As the Mississippi Supreme Court stated in *Boardman*, "the factors enumerated in Restatement §6 will from case to case be given such relative weight as they are entitled, consistent with the general scheme of the center of gravity test." 470 So.2d at 1032.

According to Liberty Mutual, the considerations of §6 of the Restatement favor the application of Alabama law in this case. Alabama has a legitimate interest in establishing and administering its own workers compensation assigned risk plan. The insurers who in effect underwrite the assigned risk pool through a series of reinsurance agreements have an interest and expectation in the claim being administered consistently under Alabama law to insure, as expressly set forth in factor (f), certainty, predictability, and uniformity in the administration of the Alabama plan and pool. In light of this arrangement, Liberty Mutual argues that Alabama has a greater interest than Mississippi in regulating the damages against companies who allegedly mishandle workers' compensation policies issued through the plan. This regulation should be certain, predictable and uniform for all policies issued through the Alabama plan.

In response, Williams argues that there can be no dispute that Mississippi has the primary interest in ensuring that its residents who are injured in Mississippi while working on-the-job in Mississippi are dealt with fairly and in good faith by insurance carriers whose policies provide benefits to Mississippi residents under the MWCC. He also argues that the "certainty, predictability and uniformity of results" and the "ease in the determination and application of the law to be applied" facts both weigh toward Mississippi, since this action is currently pending in Mississippi. Evaluating all of the factors under Section 6 of the Restatement leaves no question, in Williams' mind, that Mississippi law should apply to his claims in this action.

Section 145 of the Restatement (Second) Conflict of Laws states:

### § 145 The General Principle [for Torts]

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in §6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

   (a) the place where the injury occurred,

   (b) the place where the conduct causing the injury occurred,

   (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

   (d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

On the topic of Workers' Compensation claims, Section 184 of the Restatement

(Second) Conflict of Laws provides as follows:

### § 184 Abolition of Right of Action for Tort or Wrongful Death

Recovery for tort or wrongful death will not be permitted in any state if the defendant is declared immune from such liability by the workmen's compensation statute of a state under which the defendant is required to provide insurance against the particular risk and under which

(a) the plaintiff has obtained an award for the injury, or

(b) the plaintiff could obtain an award for the injury, if this is the state (1) where the injury occurred, or (2) where employment is principally located, or (3) where the employer supervised the employee's activities from a place of business in the state, or (4) whose local law governs the contract of employment under the rules of §§ 187-188 and 196.

-8-

Further, Section 188 of the Restatement provides, regarding any rights created by contract:

### § 188. Law Governing in Absence of Effective Choice [of law in the contract] by the Parties

(1)     The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state in which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in §6.

(2)     In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of §6 to determine the law applicable to an issue include:

(a)     the place of contracting,

(b)     the place of negotiation of the contract,

(c)     the place of performance,

(d)     the location of the subject matter of the contract, and

(e)     the domicile, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

An analysis of cases construing these Restatement provisions should lead to the conclusion that Alabama law governs Williams' claims, according to Liberty Mutual. The Complaint in this action seeks punitive and other extra-contractual damages for "bad faith" under Mississippi law, which, under Liberty Mutual's analysis, is not the applicable law. Thus, Liberty Mutual asserts that Williams' Complaint fails to state a cognizable claim against Liberty, and this action must be dismissed.

Williams responds that Liberty Mutual goes to great lengths in its Motion to argue that because the insurance contract at issue was procured in Alabama, Alabama law

should apply to his claims in this case.  He contends that this argument is irrelevant to

the issues in this case, because it is not a breach of contract action.  Rather, Williams

argues, this is a tort action seeking damages for Liberty Mutual's bad faith denial and

delay in paying benefits owed to him under Mississippi law.  He goes on to state that the

fact he sought workers' compensation benefits under both Mississippi and Alabama laws

is of no consequence to the choice of law analysis here, as a party is entitled to seek

workers compensation benefits in two states subject to a credit in the second state for

benefits received in the first.

 Some of Williams' argument is correct.  However, he misses the boat by arguing

that this is solely a tort case and not one arising from contract.  Any claim for contractual

or extra-contractual damages that Williams has against Liberty Mutual emanates from

the Alabama insurance contract between Liberty and Tanner.  Liberty Mutual's obligation

to pay worker's compensation benefits to Williams is based on the existence of that

insurance contract.  Although a "bad faith" breach of contract entitling an insured to

punitive damages is sometimes referred to as an "independent tort" under Mississippi

law, this does not detract from the fact that the underlying claim is breach of contract and

the elements required to recover punitive damages for such breach are based on the

manner in which the contract was breached.

 As Judge Barbour of this court has stated, "Although styled a tort, an action for

bad-faith breach of contract is created by contract and requires proof of a breach of

contract."  *Schoonover v. West American Ins. Co.*, 665 F. Supp. 511, 516 (S.D. Miss.

1987).  *See also, American Funeral Assur. Co. v. Hubbs*, 700 So.2d 283 (Miss. 1997)

("Although punitive damages are not ordinarily recoverable in cases involving breach of

contract, they are recoverable where the breach results from an intentional wrong, insult,

or abuse as well as from such gross negligence as constitutes an independent tort.");
*Blue Cross Blue Shield v. Maas*, 516 So.2d 495, 496 (Miss. 1987) (same).  Where there
is no breach of contract, there can be no tortious breach of contract.  *Braidfoot v. William
Carey College*, 793 So.2d 642, ¶46 (Miss. Ct. App. 2000).

The alleged wrongful delay or denial of a workers' compensation claim means an
alleged delay or denial of payment according to the worker's compensation policy.  As
such the claim is derived from a contract claim, and Section 188 of the Restatement
(Second) of Conflict of Laws provides, regarding any rights created by contract, that "the
rights and duties of the parties with respect to an issue in contract are determined by the
local law of the state which, with respect to that issue, has the most significant
relationship to the transaction and the parties under the principles stated in § 6."

Simply put, Williams has no claim for punitive or other extra-contractual damages
against Liberty Mutual under Mississippi law.  Williams' multiple actions arose out of one
injury and Liberty Mutual's only connection with his injury is the policy issued to Tanner
through the Alabama assigned risk plan.  Whether Williams has a viable claim for
punitive or other extra-contractual damages is to be determined by Alabama law.  The
fact that Williams' claim may be based in part on his claim for workers compensation
benefits under Mississippi law is irrelevant to the choice of law question.

Williams certainly may argue that the alleged delay in providing him benefits
under the Mississippi Workers Compensation Law constitutes "outrage" under Alabama
law, but it does not provide him a separate bad faith claim against Liberty under
Mississippi law.  In other words, even though his workers compensation claim may be
determined in part by Mississippi law, his claim against Liberty Mutual  is based on the
alleged breach of an Alabama contract and any damages flowing therefrom should be

determined by Alabama law, not Mississippi law.

Although Mississippi law permits a bad faith claim against a workers compensation carrier, *Southern Farm Bureau Cas. Ins. Co. v. Holland*, 469 So.2d 55, 58 (Miss. 1984), under Alabama law, "a bad faith claim against a workmen's compensation insurance carrier is barred by the exclusivity provisions of the Alabama Workmen's Compensation Act, Ala. Code Ann. §§25-5-11,-52,-53." *Farley v. CNA Ins*. Co., 576 So.2d 158, 159 (Ala. 1991). Alabama does not permit the claim of "bad faith" against a carrier, but only permits recovery of punitive and other extra-contractual damages in the workers compensation setting when the insurer/carrier has committed the tort of "outrage". *Id.* In order to recover damages for outrage under Alabama law, a plaintiff must prove that the insurer's conduct was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.*

The Fifth Circuit recently decided a choice of law issue in *Ellis v. Liberty Mutual Insurance Company*, 625 F.3d 222 (5th Cir. 2010), which clearly establishes that the law of Alabama applies to Williams' claims. *Ellis* arose in the workers compensation context and was strikingly similar to this case. In *Ellis*, the plaintiff, a Mississippi resident, was injured while working on an apartment complex construction site in Biloxi, Mississippi. 625 F.3d at 223. The owner of the apartment complex, the general contractor, the sub-contractor, the sub-sub-contractor who hired Ellis, and the employee of the subcontractor (who was alleged to have negligently caused the injury), were all Alabama residents, partnerships or corporations. *Id.* at 223-224.

The plaintiff had worked for the employer for the first nine months of his employment in Alabama, and had worked in Mississippi for a month prior to the injury.

*Id.* at 224.  The sub-sub-contractor secured workers compensation insurance in Alabama from Liberty.  *Id.*  The Liberty policy provided workers compensation coverage to the plaintiff under the laws of Alabama while he was working in Mississippi.  *Id.*  After Ellis began receiving workers compensation benefits under Liberty's Alabama policy, he filed a negligence action in Mississippi against the apartment complex owner, the sub-contractor, the sub-sub-contractor, and the employee of the sub-contractor who was alleged to have caused the injury.  *Id.*

The defendants sought summary judgment on the ground that, under Mississippi law, workers compensation benefits were the exclusive remedy of a sub-contractor's injured employee.  However, under Alabama workers' compensation law, a sub-contractor's injured employee was permitted to sue co-employees and/or the general contractor whose negligence caused the injury.  *Id.* at 225.  Accordingly, the case involved a substantive conflict between the laws of Mississippi and Alabama.  *Id.*

The district court had determined that Mississippi had the most significant relationship to the case, because the accident occurred in Mississippi, the negligent conduct causing the accident occurred in Mississippi, and the plaintiff resided in Mississippi.  *Id.* at 224.  On appeal, applying Mississippi's choice of law analysis, the Fifth Circuit reversed, and determined that Alabama law should apply.  Applying Restatement (Second) of Conflict of Laws §145 regarding tort actions, the Fifth Circuit stated that the first two factors (place of injury and place of negligent conduct) favored Mississippi, because both the injury and the negligent conduct occurred in Mississippi.  *Id.* at 226.  However, the Fifth Circuit noted that those factors were not dispositive where some other state had a more significant relationship under the general choice-of-law principles stated in Restatement §6.  *Id.*

The Ellis court noted that the state where the injury occurred had an interest in awarding relief under its workers' compensation law lest the state be required to care for the injured employee. *Id.* at 226-227. However, the court found that Mississippi did not have that interest in Ellis's case, because he had already received protection from the State of Alabama pursuant to its workers' compensation law. *Id.* at 227. The court found that the third (domicile, residence, nationality, place of incorporation and place of business of the parties) and fourth (place where parties' relationship centered) §145 factors favored Alabama.

The court noted that the employment relationship was centered in Alabama as were the other business relationships involved. *Id.* The court found that the most important factors were that the employer took out and maintained Alabama workers' compensation insurance in Alabama covering employees working out of state, and that Ellis actually received benefits pursuant to that Alabama coverage. *Id.* "These facts satisfy us that Alabama has a more significant relationship to this case than does Mississippi, in large part because the parties have already engaged Alabama's workers compensation scheme." *Id.* The court went on to state:

> Our main concern with regard to comprehensive implementation of workers' compensation schemes has been maintaining the underlying *quid pro quo* of requiring employers to provide no-fault workers compensation benefits to employees in exchange for tort immunity. Section 184 of the Restatement resolves this issue by prohibiting recovery in tort "if the defendant is declared immune from such liability by the workmen's compensation statute of a state under which the defendant is required to provide insurance ... and under which ... the plaintiff could obtain an award for the injury." The Restatement's commentary explains:
>
>> It is thought unfair that a person who is required to provide insurance against a risk under the workmen's compensation statute of one state which gives him immunity from liability for tort or wrongful death should not enjoy that immunity in a suit brought in other states ... A person who accepts an award under the

-14-

> workmen's compensation statute of a given state may justly be held
> bound by the provisions of that statute insofar as immunity from tort
> or wrongful death liability is concerned.

*Id.* at 227-228 (quoting Restatement (Second) of Conflict of Laws §184).

The Fifth Circuit went on to find that Restatement §184 did not apply to give the general contractor and the sub-contractor's co-employees the immunity enjoyed under Mississippi law, because Ellis's employer had not been required to purchase, and had not purchased, a policy of workers' compensation insurance in Mississippi.  Id. at 228. Rather, the Court stated that, under the Restatement principles, an injured worker should be free to pursue any tort remedies under the state law that had provided him with workers' compensation benefits, which, in Ellis's case, was Alabama.  *Id.*  Because Alabama law allowed the injured employee of a sub-contractor to sue the general contractor and co-employees of the sub-contractor, the court found that Ellis would not be prohibited under §184 from suing those defendants in tort.  *Id.*

After finding that §184 did not preclude the particular tort suit in Mississippi applying Alabama law, the Fifth Circuit then held that the remaining Restatement factors compelled the conclusion that Alabama law applied:

> We have also endorsed consideration of "the expectations of the parties
> and the minimization of adverse consequences that might follow from
> subjecting a party to the law of more than one state," which echoes the
> Restatement's guiding principle, viz., "the protection of justified
> expectations." The facts of this cases [sic] demonstrate that the [employer
> and the employee] reasonably expected that Alabama law would govern
> their workers compensation claims. This was the anticipated situation even
> if the injury occurred out of state, given the employer's maintenance of an
> Alabama insurance policy covering temporary out-of-state work ... At
> bottom, the Restatement requires deferring to the state with the most
> significant relationship to the particular issue in dispute. When assessing
> whether a workers compensation law should afford tort immunity to parties,
> the important state ties are naturally where the employer provides workers
> compensation insurance coverage and the employee has already received
> such benefits for the injury at issue. In this case, Alabama is that state, so

> Ellis's tort action should be governed by Alabama's workers' compensation law, which has thus far governed the relationships between the parties.

Id. at 228-229.

Here, just as in *Ellis*, the employment relationship -- and any workers compensation benefit arising from any employment -- was centered in Alabama. As stated above, prior to the day of the injury, all of Williams' work for Tanner had been on projects in the State of Alabama. As in *Ellis*, the employer here applied for and purchased a workers compensation policy providing coverage in Alabama that also provided coverage for employees working temporarily in other states. Unlike *Ellis*, however, in the present action Restatement §184 does apply and prohibits recovery in a bad faith action under Mississippi law. As made clear in *Ellis*, §184 prohibits a plaintiff who has accepted workers compensation benefits in one state from recovering in tort under the law of another state, where (1) the employer was required to provide workers compensation coverage in the first state, and (2) the law of the first state provides immunity against such a tort recovery.

Here, both elements necessary to trigger §184 are triggered. The employer was required to provide, and did provide, workers compensation coverage in Alabama. As stated above, under Alabama law the benefit provided by the Alabama Workers Compensation Act is the exclusive remedy against both the employer and the carrier. *Farley v. CNA Ins. Co.*, 576 So.2d at 159. The Alabama Supreme Court has held that this immunity precludes an action for "bad faith." *Id.*

Thus, §184 prohibits recovery against the employer and carrier on a bad faith claim under Mississippi law. Williams, having accepted benefits in Alabama, may justly be required to pursue only such tort remedies as Alabama law allows against the

employer and carrier; i.e., he may only pursue the tort of "outrage" under Alabama law. Any other result would disappoint the employer and carrier's reasonable expectation that such immunity would be provided.

Although the *Ellis* decision clearly establishes that Alabama law applies to Williams' claim, it is also evident that prior cases applying Mississippi's choice of law analysis also lead to the conclusion that Alabama law governs Williams' claim.  For example, in *Boardman v. United Services Auto Assn.*, 470 So.2d 1024, 1031-32 (Miss. 1985), the court relied on Restatement §188 to resolve the choice of law question, *id.* at 1032, and applying these factors the court held that Nebraska law applied to determine the coverage issue.  *Id.* at 1034.

*Boardman* involved the construction of an exclusionary clause in the uninsured motorist provision of an automobile policy issued in Nebraska to a resident of Nebraska. It covered 3 automobiles that were principally garaged in Nebraska.  Therefore, the principal location of the risks insured against was in Nebraska.  The only contact with Mississippi was the fact that Joseph Boardman, the insured's son and a member of his household, purchased a vehicle while working in Mississippi and subsequently had an accident in Mississippi.  *Id.* at 1032.

In reaching its decision, the *Boardman* court found the following factors, among others, to be irrelevant: that Joseph Boardman was temporarily residing in Mississippi; that he had purchased the vehicle in which he had the accident in Mississippi; that he had purchased a tag in Mississippi; that the accident occurred in Mississippi; that all witnesses to the accident resided in Mississippi; that at the time the lawsuit was filed the insured had moved to Mississippi; and that the insurer was qualified to do business in Mississippi and was in fact issuing policies in Mississippi.  *Id.* at 1035-37.

In considering the §188 factors, the *Boardman* court noted the importance of distinguishing factors relevant for purposes of determining personal jurisdiction or venue from those relevant to choice of law. *Id.* at 1037. The court held that even Mississippi's strong public policy against exclusionary clauses in uninsured motorist provisions was not sufficient to override the choice of law rules, which favored a state possessing greater contacts with the parties and the action. *Id.* at 1038.

The court said this was particularly true when the factors listed in §188(2) "point so strongly to Nebraska as the state that ought to furnish the rule of decision governing adjudication of the coverage question presented here." *Id.* at 1039. The court held that, although the rights and liabilities of Joseph Boardman were surely determinable under Mississippi law, the coverage question was determinable under Nebraska law. *Id.* at 1039. *See also, Ingalls Shipbuilding v. Federal Ins. Co.*, *supra* (applying *Boardman* in holding Texas law governed insurance dispute); and *Broadhead v. Hartford Cas. Ins. Co.*, 773 F. Supp. 882, 892-93 (S.D. Miss. 1991) (same).

Even if the contract issues are set aside, as Williams argues, and the choice of law analysis for a traditional tort is applied, Alabama law still controls, as the Fifth Circuit found in *Ellis*. An earlier Mississippi case, *Mitchell v. Craft, supra*, analyzed §145 of the Restatement (Second) Conflict of Laws regarding torts. Williams places most of his emphasis on "the place of injury and disregards *Mitchell*. In *Mitchell*, the Mississippi Supreme Court rejected the notion that the place of injury was controlling. 211 So.2d at 512-13. As the court stated, "in many cases [such a rule] bears little relationship to any relevant considerations for choosing one law against another in a particular tort case." *Id.* at 513.

In *Mitchell*, the court adopted the center of gravity test as set forth in §145 of the

Restatement (Second) Conflict of Laws.  Applying the factors of §145 to this case, Alabama clearly has "the most substantial contacts with the parties and the subject matter of [this] action."  Except for the completely fortuitous fact that Williams was hired to work for Tanner at Pat Peck Motors in Gulfport on a temporary basis and that he was injured his first day on the job, Mississippi has nothing to do with the parties or the subject matter of this action.

The policy was issued in Alabama to an Alabama policyholder to insure risks in Alabama.  The policy only provided coverage for work in other states on a limited basis for employees who were hired in Alabama and injured while temporarily working in other states.  More importantly, the policy was obtained through the Alabama assigned risk plan and was reinsured by workers compensation carriers in Alabama.  Although Williams was injured in Mississippi, Alabama clearly has "the most significant relationship to the occurrence and the parties."

The court finds that Alabama law should be applied to Williams' claims.  Under Alabama law, the benefit provided by the Alabama Workers Compensation Act is the exclusive remedy against both the employer and the carrier.  "[A] bad faith claim against a workmen's compensation insurance carrier is barred by the exclusivity provisions of the Alabama Workmen's Compensation Act, Ala. Code Ann. §§25-5-11,-52,-53."  *Farley v. CNA Ins. Co.*, 576 So.2d at 159.  Since Williams' his Complaint in this action only seeks punitive and other extra-contractual damages under Mississippi law, it fails to state a cognizable claim against Liberty Mutual and should be dismissed.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Dismiss **[#46]** filed on behalf of the defendant, Liberty Mutual Insurance Company is granted and the Complaint filed on behalf of the plaintiff, Clinton Williams, is dismissed with prejudice.

IT IS FURTHER ORDERED AND ADJUDGED that all other pending motions in this action are denied as moot.  A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 31st day of October, 2011.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE